UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| TRACY REGAN HOPKINS,<br><br>　　Plaintiff,<br><br>　　v.<br><br>TIPPECANOE COUNTY JAIL ADMINISTRATION, et al.,<br><br>　　Defendants. | CAUSE NO.: 4:22-CV-52-TLS-JEM |

**OPINION AND ORDER**

Tracy Regan Hopkins, a prisoner without a lawyer, filed an Amended Complaint. ECF No. 9. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The Plaintiff alleges he slipped and fell while exiting the shower at the Tippecanoe County Jail on June 9, 2022, which caused injury to his back and previously surgically repaired elbow. He alleges this occurred because the water does not properly drain in the front of the showers and, while the shower floors themselves were covered by a non-slip surface, neither non-slip surfaces nor mats were present on the sloped floor near the shower exit. He claims water remained in the showers from August 2021 to June 2002, even when they were not being used. He states several administrative defendants were "made aware of this dangerous situation by medical." Am. Compl. at 7. To support this assertion, he notes inmates were instructed during

intake by medical that, "If you have shower shoes be sure and wear them when you shower." *Id*. at 8.[1]

The day after he fell, he spoke with Nurse Laurisa when she came to give him his routine pain medication and informed her of the situation. She instructed him to put in a medical request to see the doctor. He attempted to do so (and to also file a grievance), but his tablet malfunctioned and generated an error message stating he had "exceeded maximum minutes allowed per day." *Id*. at 9. Later that night, a female nurse described as Jane Doe #1 was passing out his asthma medication and ibuprofen 800 mg, and the Plaintiff showed her his injured right elbow. He told her he was in pain and that he couldn't use his tablet to file a medical request. She promised to bring him a physical medical slip, but she did not. However, he was able to submit a medical request on the tablet the next morning.[2]

On June 12, 2022, the Plaintiff informed Officer Crow he injured his right elbow while exiting the shower. Officer Crow told the Plaintiff to submit another medical request on his tablet, which he did. When Nurse Ashley Waters visited him later that morning to distribute his routine allergy medication, prednisone, and ibuprofen 800 mg, he informed her he had slipped and fallen. He showed her his elbow, which was swollen and red with a scab, and described his pain as "extreme." *Id*. at 10. Nurse Waters told the Plaintiff she would inform Nurse Kimberly Philips of the situation. Nurse Philips assessed him that morning and concluded that his elbow was "tender to the touch and swollen a little." *Id*. at 11. She also noted that the "floor is very slippery when wet [e]specially with those shower shoes coming out of the shower." *Id*. She told

---

[1] The Plaintiff also claims a nurse later told him to be careful because the floor exiting the shower was slippery, which allegedly proves medical knew of the danger because "every situation that occurs from an accident and requires medical treatment by doctor/nurse has to be documented by Medical Records and by the detainee through the tablet." Am. Compl. at 11. He, in turn, alleges the jail's supervisory defendants must also have known of the danger.
[2] He also attempted to file a grievance that morning, but he was unable to complete it.

him he would be scheduled to see the doctor. In the interim, he was prescribed more pain medication (Tylenol 1000 mg in addition to the ibuprofen 800 mg he was already receiving) and instructed to ice his elbow three times a day. He was also instructed to continue taking the prednisone twice a day that he had previously been prescribed. He continued this regimen for approximately two weeks.

On June 20, 2022, the Plaintiff submitted a medical request to continue the additional pain medication and to be assigned to a low bunk. On June 27, 2022, he woke up in extreme pain. His elbow was swollen, red, hot to the touch, and filled with fluid. He filled out a medical request and told Nurse Waters and Officer Maria about the newly worsened pain when they brought him his morning medication. He was informed he was on the list to see the doctor. Nurse Corey checked the Plaintiff's vitals and assessed his elbow shortly thereafter. The Plaintiff was seen by Dr. Tchapchet at 8:50 A.M. that morning. After examining him, Dr. Tchapchet prescribed two forms of antibiotics, continued the previously prescribed pain medication and steroids, and ordered an x-ray and arm sling. The x-ray, which was performed three days later on June 30, 2022, showed "degenerative joint disease and spurring." *Id*. at 13. His arm continued to swell and worsen over the next several days. By July 4, 2022, however, it was still swollen, sore, red, and hot to the touch, but it had stopped getting worse. The Plaintiff missed his morning medication the next day because he did not hear it called.

The Plaintiff has sued the Tippecanoe County Jail Administration, Sheriff Robert Goldsmith, Jail Commander Tom Lehmen, Assistant Jail Commander Carrie Morgan, Maintenance Supervisor Vince Andrews, Nurse Laurisa Huber, Nurse Ashley Waters, Correctional Officer Cheryl Hopkins, and Correctional Officer David for compensatory and

punitive damages. He also asks for the Defendants to be suspended from their jobs and for the shower exit to be fixed.

Because the Plaintiff alleges he was a pretrial detainee when these events occurred, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *see also Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991) (citation and quotation marks omitted). Nevertheless, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether a challenged action is objectively unreasonable, courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). Of note, however, "negligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. *Miranda*, 900 F.3d at 353.

With regard to the slip and fall outside of the shower, the Plaintiff alleges that the defendants violated his rights because the concrete near the exit of the shower was slippery. He believes the supervisory defendants—Sheriff Goldsmith, Commander Lehmen, Assistant

Commander Morgan, and Maintenance Supervisor Vince Andrews—must have known of and disregarded the risk because: (1) there was standing water inside the showers for several months; (2) it was jail policy to instruct inmates to wear the shower shoes provided; (3) a nurse reminded him to be careful after he fell; and (4) all accidents were documented by medical. None of these allegations give rise to a Fourteenth Amendment violation because slippery surfaces in prisons, without more, are generally not considered unconstitutionally hazardous. *See Pyles v. Fahim*, 771 F.3d 403, 410–11 (7th Cir. 2014). For example, even when an inmate plausibly alleged the warden "consciously ignored a safety hazard" of wet and slippery stairs after being told directly about it, the Seventh Circuit found that the hazard was not "sufficiently serious" to invoke the Constitution. *Id.* at 410. "Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Id.* at 410, 410 n.25 (collecting cases). The Plaintiff lists several of his own proposals to remedy the slippery area, but the existence of possible solutions does not transform a situation of negligence into a constitutional violation. To the contrary, the defendants here appear to have attempted to mitigate the risk of an "unavoidably wet" area by providing shower shoes and mats within the showers themselves. *See Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (distinguishing an instance where stairs were "slicked with milk and cluttered with garbage" from shower areas that "necessarily produce wet floors"). These allegations do not state a claim against any defendant.

The Plaintiff also claims he was denied adequate medical care. Pretrial detainees are entitled to adequate medical care under the Fourteenth Amendment. *Miranda*, 900 F.3d at 353-54. To establish a violation of the right to adequate medical care, a pretrial detainee must allege

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively

5

unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm.

*Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and quotation marks omitted). In determining whether a challenged action is objectively unreasonable, the court must consider the "totality of facts and circumstances." *Dart*, 974 F.3d at 819. As noted above, "negligent conduct does not offend the Due Process Clause," and it is not enough for the plaintiff "to show negligence or gross negligence." *Miranda*, 900 F.3d at 353-54.

The Plaintiff alleges he hurt his surgically repaired elbow during the fall on June 9th. After he informed medical about it, he was seen by medical staff twice a day and was continually given routine pain medication including ibuprofen 800 mg and steroids. His elbow was specifically assessed by Nurse Philips on the morning of June 12th, and she prescribed *additional* pain medication and ice—in conjunction with the previously prescribed pain medical and steroids—which continued over the next two weeks. When his elbow suddenly worsened on June 27th, his vitals were assessed by Nurse Corey, and he was evaluated by Dr. Tchapchet that same morning. Dr. Tchapchet prescribed two antibiotics, continued the previous medications, and ordered an x-ray, which showed evidence of his pre-incarceration injury. Although the infection worsened over the next several days, it began to resolve by July 4th. In a medical request dated July 12th, which the Plaintiff attached to the amended complaint,[3] he admits the pain was "not as bad as it was." Am. Compl. at 20. In a July 21st medical request, the Plaintiff states he was having only "minor pain and I just need aspirin as needed." *Id*. at 21. It is obvious he was subsequently prescribed some form of medication because in an August 29th medical

---

[3] The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court [determines] the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted).

request, the Plaintiff states he "was receiving ibuprofen 800 and the prescription has ended," so he would like the medication to be "*continued* as needed" for pain in his elbow and back that he was experiencing "from time to time." *Id*. at 23 (emphasis added).

Even construed generously in the Plaintiff's favor, these allegations do not state a Fourteenth Amendment claim. It cannot be said that any of the defendants acted objectively unreasonably under the circumstances. Instead, the allegations demonstrate the Plaintiff was provided with reasonable medical care in response to his elbow injury, and, based on these facts, it is not rational to infer that he will cease receiving such care in the future.[4] *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (acknowledging that a plaintiff can plead himself out of court if he pleads facts that defeat an essential element of his claim); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (same).

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

---

[4] The Plaintiff also alleges he missed his morning medication on one occasion because he did not hear it called. He claims he told Nurse Laurisa, Nurse Waters, and Officer David he didn't receive his antibiotics and ibuprofen, but they refused to return later that morning because they suggested allowing inmates to receive it after failing to show up during call would disrupt the routine administration of medication. Even assuming, *arguendo*, that refusing to provide the missed dose was objectively unreasonable—a conclusion that is far from clear—there is no indication the Plaintiff suffered any sort of actual injury related to it. This is especially true since he does *not* allege he failed to receive the second dose later that evening (and he *does* provide documentation showing his infection resolved shortly thereafter). *See e.g. Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (explaining that a claim fails because there was no evidence of a "recoverable injury"); *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1032 (7th Cir. 2019) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011))).

For these reasons, the Court DISMISSES the Plaintiff's Amended Complaint [ECF No. 9] pursuant to 28 U.S.C. § 1915A. The Clerk of Court is DIRECTED to close this case.

SO ORDERED on May 4, 2023.

s/ Theresa L. Springmann<br>
JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT